IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EMR (USA HOLDINGS), INC., *et al.*,<br><br>　　　　　Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:24-cv-09545-KMW-MJS<br><br>**OPINION** |

**Deborah M. Reyher, Esq.**
U.S. Department of Justice
Environmental and Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611

*Counsel for the United States of America*

**Diana A. Silva, Esq.**
Manko, Gold, Katcher & Fox, LLP
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004

*Counsel for defendants EMR (USA Holdings) Inc.; Camden Iron & Metal, Inc.; Atlas Traders, LLC; SPC Corporation; Rhino Recycling, Inc.; Delco Metals, Inc.; United Compressed Steel Company; Tioga Real Estate, LLC (collectively, the "EMR Entities")*

**Garrett D. Trego, Esq.**
Manko, Gold, Katcher & Fox, LLP
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004

*Counsel for defendants Sims Group USA Holdings Corporation; Simsmetal East LLC f/k/a Hugo Neu Schnitzer East; Metal Management Northeast, Inc. (collectively, the "Sims Entities")*

**Larry E. Hardcastle, Esq.**
Lanciano & Associates LLC
2 Route 31 North
Pennington, NJ 08534

*Counsel for defendant Mercer Group International of New Jersey, Inc.*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

Before the Court is the unopposed Motion of the United States of America (the "Government" or "Plaintiff") seeking the entry of a proposed consent decree pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.* Having reviewed the Motion and supporting submissions—and for the reasons set forth below—the Court will grant the Motion and enter the consent decree.

## II. BACKGROUND

### A. Statutory Framework

CERCLA, also known as the "Superfund statute," was enacted by Congress in 1980 to address "the serious environmental and health risks posed by industrial pollution." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). Under CERCLA, the U.S. Environmental Protection Agency ("EPA"), acting on behalf of the President, is authorized to undertake or arrange for removal of hazardous substances and remediate contaminated sites. *See Giovanni v. United States Dep't of Navy*, 906 F.3d 94, 115 (3d Cir. 2018); *see also* 42 U.S.C. §§ 9604, 9615; Exec. Order No. 12,580, 52 Fed. Reg. 2923 (Jan. 23, 1987). To fund these efforts and promote the timely cleanup of hazardous waste sites, CERCLA created the Hazardous Substance Response Trust Fund (*i.e.*, the "Superfund"). *See Atl. Richfield Co. v. Christian*, 590 U.S. 1, 6 (2020).

Critically, CERCLA establishes a civil liability scheme that enables the Government to seek reimbursement from potentially responsible parties ("PRPs") to replenish the Superfund and ensure that the polluters, rather than the public, bear the costs of cleanup. *See United States v. Occidental Chem. Corp.*, 200 F.3d 143, 145 (3d Cir. 1999) (citing 42 U.S.C. § 9607(a)).

Section 107(a) of CERCLA imposes strict, joint, and several liability on four broad categories of PRPs, namely: (1) current owners and operators of the facility at which the contamination occurred; (2) persons who were owners or operators of the facility at the time of disposal of any hazardous substance; (3) persons who arranged for the disposal or treatment of the hazardous substance; and (4) persons who transported the hazardous substance. *See* 42 U.S.C. § 9607(a). A party falling into one of these four categories will be liable when there is a "release" or a "threatened release" of a hazardous substance from the facility that generates response costs. *Id.*; *see also Litgo New Jersey Inc. v. Comm'r New Jersey Dep't of Env't Prot.*, 725 F.3d 369, 379 (3d Cir. 2013).

Notwithstanding the foregoing, "[s]ettlements are the heart of the Superfund statute." *Atl. Richfield*, 590 U.S. at 22. To promote the timely cleanup of hazardous substances, CERCLA not only authorizes, but encourages the Government and PRPs to enter into judicially enforceable settlement. *See id.* "Some settlements between PRPs and [the] EPA . . . involve agreements to do work, while others are 'cash out' settlements in which a party pays a portion of the past, or future, response costs in exchange for a release from liability." *Occidental Chem.*, 200 F.3d at 147. In any case, settlement agreements under CERCLA must be approved and entered by district courts as consent decrees. *See* 42 U.S.C. §§ 9622(a), (d)(1)(A).

B. **Relevant Facts**

In this case, the Government seeks recovery of past response costs incurred by the EPA in connection with its cleanup of hazardous substances on a 52-acre area of land located in Gloucester County, New Jersey (the "Site"). *See* Compl. ¶¶ 1, 11. Between 2001 and 2017, the Site was operated by Shamrock Enterprises, a sole proprietorship owned by John Scully Jr. *See id.* ¶¶ 13,

3

24. Shamrock functioned as both a compressed gas supplier and a scrap yard, accepting deliveries of used compressed gas cylinders for processing and disposal. *See id.* ¶¶ 14–15, 24.

During its operations, Shamrock stockpiled thousands of gas cylinders on-site, including many that were difficult to process and contained hazardous substances such as asbestos, acetone, ethylene oxide, hydrogen chloride, hydrogen sulfide, and silane. *See id.* ¶¶ 15–17, 28. These substances are classified as "hazardous substances" under CERCLA. *See id.* ¶17; *see also* 42 U.S.C. § 9601(14).

The stockpiled cylinders posed significant environmental and public health risks, especially due to their proximity to a residence within 500 feet and nineteen additional residences within 2,500 feet of the Site. *See* Compl. ¶ 18. Further compounding the risk, some cylinders were found beneath high-voltage electric transmission lines connected to the Hope Creek Nuclear Plant in Salem, New Jersey. *See id.* ¶ 19. Many propane cylinders were stored horizontally, disabling safety valves and heightening the risk of flammable gas release. *See id.* The Site is also located within the fire-prone Pinelands region of southern New Jersey, and deteriorating acetylene cylinders were found near woodland areas without fire breaks. *See id.* ¶ 20.

In November 2017, the New Jersey Department of Environmental Protection (the "NJDEP") issued an administrative order directing Shamrock to implement corrective measures, but ultimately determined that Shamrock was incapable of compliance. *See id.* ¶ 26. NJDEP subsequently referred the Site to the EPA on February 1, 2018. *See id.* ¶ 26. The EPA conducted an inspection and removal site evaluation on February 7, 2018, and formally authorized a time-critical removal action on February 23, 2018. *See id.* ¶ 27. On February 16, 2018, the EPA, NJDEP, and other local officials found approximately 3,000 full or partially full cylinders in various states of deterioration, many of which contained hazardous substances. *See id.* ¶ 28. The EPA completed

the removal action on September 18, 2018. *See id.* ¶ 21. Ultimately, the Government incurred over $1.5 million in costs relating to the Site. *See id.* ¶ 32.

On September 30, 2024, the Government initiated the instant action under CERCLA § 107(a), in which it seeks to recover the costs it incurred in connection with the cleanup of the Site. The Complaint names twelve defendants, each of whom is alleged to have been parties who arranged for the disposal or treatment of hazardous substances, as provided by CERCLA § 107(a)(3) (collectively, "Defendants").[1] *See* 42 U.S.C. § 9607(a)(3).

### C. Proposed Settlement

The parties have agreed to settle the Government's claims pursuant to the terms set forth in a proposed consent decree (the "Consent Decree"), for which the Government now seeks the Court's approval. Alongside its Complaint, the Government filed a Notice of Lodging of Consent Decree (ECF No. 2), which was published in the Federal Register on October 9, 2024, in accordance with 28 C.F.R. § 50.7, thereby commencing a thirty-day public comment period. *See* 89 Fed. Reg. 81940. After the comment period concluded, the Government filed the present Motion requesting approval and entry of the Consent Decree. (ECF No. 7.)

The Consent Decree resolves all claims asserted by the Government against Defendants. (ECF No. 2-1.) Under its terms, Defendants will collectively pay $900,000 to the Government within thirty days of entry, reimbursing the Government for past response costs incurred in connection with the Site. In return, the Government covenants not to sue or take administrative action against Defendants under CERCLA §§ 106 or 107(a) for those past costs. The Consent

---

[1] "Defendants" specifically and collectively refers to the named defendants in this action: EMR (USA Holdings) Inc.; Camden Iron & Metal, Inc.; Atlas Traders, LLC; SPC Corporation; Rhino Recycling, Inc.; Delco Metals, Inc.; United Compressed Steel Company; Tioga Real Estate, LLC; Sims Group USA Holdings Corporation; Simsmetal East LLC f/k/a Hugo Neu Schnitzer East; Metal Management Northeast, Inc; and Mercer Group International of New Jersey, Inc.

5

Decree further provides Defendants with protection under CERCLA § 113(f)(2), barring any potential contribution claim by other parties relating to the Site.

## III. DISCUSSION

Although the Consent Decree proposed in this case remains uncontested, this Court has an obligation to independently review its terms and determine whether they are (1) fair, (2) reasonable, and (3) consistent with the goals of CERCLA. *See United States v. SEPTA*, 235 F.3d 817, 823 (3d Cir. 2000) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85 (1st Cir. 1990)).

### A. <u>Fairness</u>

In examining the fairness of proposed consent decrees, courts must consider both their procedural and substantive dimensions. *See In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003). "Procedural fairness requires that settlement negotiations take place at arm's length," which thus requires courts to "look to the negotiation process and attempt to gauge its candor, openness[,] and bargaining balance." *Id.* (quoting *Cannons*, 899 F.2d at 85) (internal quotation marks omitted). "Substantive fairness requires that the terms of the consent decree are based on 'comparative fault' and apportion liability 'according to rational estimates of the harm each party has caused.'" *Id.* (quoting *SEPTA*, 235 F.3d at 823).

First, the Court finds that the Consent Decree is procedurally fair. It reflects a negotiated resolution between and among the United States and the twelve named Defendants—each of whom is represented by counsel and has had the opportunity to participate in arms' length negotiations. There is no indication of coercion or lack of meaningful participation. Indeed, the very fact that every Defendant voluntarily agreed to the settlement further supports the procedural fairness of the decree. The negotiations took place over an extended period, involved multiple exchanges

6

between the parties, and culminated in a mutually agreeable resolution. This process comports with the principles of transparency and participation that underlie procedural fairness.

The Court also finds that the Consent Decree is substantively fair. The settlement amount, $900,000, represents a reasonable compromise in light of the Government's past costs and the costs of litigation. The Consent Decree does not disclose the precise allocation amounts per Defendant, but that does not suggest unfairness under the circumstances here. Again, the fact that all twelve named Defendants have agreed to the settlement—and that none have objected—strongly supports a finding of substantive fairness. *See United States v. Kramer*, 19 F. Supp. 2d 273, 285 (D.N.J. 1998) (reasoning that ratification of consent decree by "vast majority" of PRPs was "[a] most telling measure of substantive fairness"). Moreover, the settlement amount, although expressed as a collective sum, is bordered by provisions that apply stipulated penalties and interest to any Defendant who fails to make timely contributions. By discouraging free-riding and encouraging prompt compliance, these enforcement provisions enhance the fairness of the settlement and reduce the risk that one party will be left to shoulder the burden of others—all while ensuring that the settlement amount is satisfied in full. *See United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1086 (1st Cir. 1994) ("After all, the ultimate measure of accountability in an environmental case is the extent of the overall recovery, not the amount of money paid by any individual defendant."). Lastly, no non-party PRP has sought to intervene in this case or object to the Consent Decree, suggesting that the settlement terms do not stand to unfairly prejudice others with potential liability, if any. *But see Tutu Water Wells*, 326 F.3d at 208 (holding that consent decree is not necessarily rendered unfair by possibility that non-settling party's liability would consequently increase).

In conclusion, the Court finds that the Consent Decree is both procedurally and substantively fair. It is the product of informed, good-faith negotiations among all Defendants, none of whom object; it faces no opposition from non-settling parties; and it includes mechanisms that promote equitable apportionment of the costs.

### B. Reasonableness

Next, the Court assesses whether the Consent Decree's terms are reasonable. "Reasonableness" is a "fact-sensitive inquiry that depends upon the terms of the decree and the nature of the relief sought and the remedy contemplated." *United States v. Atlas Mins. & Chemicals, Inc.*, 851 F. Supp. 639, 652 (E.D. Pa. 1994) (citing *Cannons*, 899 F.2d at 89). Although finding reasonableness is a "multifaceted exercise," three such facets include whether the settlement (1) is likely to be an effective vehicle for cleansing the environment, (2) satisfactorily compensates the public for the actual and anticipated costs of remedial and response measures, and (3) reasonably reflects the relative bargaining strengths of the settling parties. *See Cannons*, 899 F.2d at 89. However, if a proposed consent decree more straightforwardly provides for the recoupment of past costs, courts generally focus on the second factor and determine whether the settlement "adequately reimburse[s] the public fisc for incurred costs attributable to the [PRPs]." *United States v. Alsol Corp.*, No. 2:13-cv-380, 2021 WL 1050373, at *3 (D.N.J. Mar. 19, 2021); *see also Kramer*, 19 F. Supp. 2d at 287 (D.N.J. 1998) (assessing whether "compensation to the public" was "satisfactory").

Here, the Government has incurred approximately $1.5 million in response costs, and the Consent Decree secures $900,000 from the settling parties—covering 60% of those expenditures. This recovery represents a meaningful and substantial reimbursement, given the risks inherent in litigation, the challenges of proving liability and apportionment among multiple PRPs, and the

likelihood that further pursuit of costs would result in delay, uncertainty, and additional expense. *See Cannons*, 899 F.2d at 90 (recognizing that settlements are not expected to extract full-cost recovery in every instance) ("The reality is that, all too often, litigation is a cost-ineffective alternative which can squander valuable resources, public as well as private."). Moreover, this amount warrants deference because it reflects the informed judgment of the EPA, which—as the lead enforcement agency under CERCLA—is in the best position to shape adequate settlements involving environmental cost recovery. *See Kramer*, 19 F. Supp. 2d at 281 (noting that deference to agency expertise is "especially strong where a consent decree has been negotiated by the Department of Justice on behalf of the EPA"). There is otherwise no indication that this settlement is unreasonable. *See, e.g.*, *United States v. Acton Corp.*, 733 F. Supp. 869, 872 (D.N.J. 1990) ("A settlement may be deemed unreasonable . . . if it is based on a clear error of judgment, a serious mathematical error, or other indicia that the parties did not intelligently enter into the compromise.").

In light of these considerations, the $900,000 recovery strikes a reasonable balance between the Government's interest in cost recovery and the practical realities of enforcement, and thus satisfies the applicable standard of reasonableness.

C. **Fidelity to the Statute**

Lastly, the Court must determine whether the terms of the Consent Decree are consistent with CERCLA's aims. CERCLA was enacted with two major policy goals in mind: (1) "ensuring that prompt and effective clean-ups are put into place," and (2) "making sure that the PRPs responsible for the hazards created bear their approximate share of the responsibility." *New Jersey Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 496 (3d Cir. 2020) (internal quotation marks omitted). "In other words, be quick and share the costs." *Id.*

By allowing the Government to recover a substantial portion of its past expenditures without protracted litigation, the Consent Decree here advances the first goal by replenishing the Superfund and ensuring that resources are available for future cleanup efforts. At the same time, requiring Defendants to contribute financially toward the costs already incurred by the EPA promotes the second goal of accountability. Accordingly, the Court finds that the Consent Decree is consistent with CERCLA's goals.

### IV. CONCLUSION

For the reasons articulated above, the Court finds that the Consent Decree is fair, reasonable, and consistent with CERCLA's goals. Accordingly, the Government's Motion to approve and enter the same is granted.

Dated: June 27, 2025

*Karen M. Williams*
KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE